1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
7                                    AT TACOMA

8   PAUL D. HIXSON,

9                          Plaintiff,              CASE NO. 15-cv-05688 BHS JRC

10        v.                                       REPORT AND RECOMMENDATION
                                                   ON PLAINTIFF'S COMPLAINT
11  CAROLYN W. COLVIN, Acting                      Noting Date: September 23, 2016
    Commissioner of the Social Security
12  Administration,

13                         Defendant.

14

15        This matter has been re-referred to United States Magistrate Judge J. Richard

16  Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

17  4(a)(4), by an Order dated August 16, 2016, and as authorized by *Mathews, Secretary of*

18  *H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976); *see also* Dkt. 24. This matter has been

19  fully briefed (*see* Dkt. 18, 19, 20).

20        After considering and reviewing the record, the Court concludes that the ALJ's

21  written decision fails to address whether plaintiff's 2013 third knee surgery and resulting

22  disabling knee impairment was the result of hardware placed during plaintiff's first

23  surgery following the August 2010 original accident or during plaintiff's second surgery

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

1  following the March 2011 felony incident. Whether or not plaintiff is eligible for benefits

2  may hinge on the answer to this question. The ALJ did not address it in his decision.  As

3  a result, the ALJ failed to consider significant, probative evidence, and the error was not

4  harmless because the ALJ determined that plaintiff was ineligible for benefits under Title

5  II without addressing that issue. Therefore, the ALJ's decision should be reversed and

6  remanded pursuant to sentence four of 42 U.S.C. § 405(g).

7
## BACKGROUND

8
9  Plaintiff, PAUL D. HIXSON, was born in 1963 and was 47 years old on the

10  alleged date of disability onset of August 31, 2010 (*see* AR. 292-95, 296-301). Plaintiff

11  has his GED, has taken music and business machine classes, and has completed his

12  carpenter's apprenticeship (AR. 50-51, 53). Plaintiff worked at union construction jobs

13  installing insulation, firestop in commercial construction (AR. 330-36).

14  According to the ALJ:

15  Since the alleged onset date of disability, August 31, 2010, the claimant
has had the following severe impairments under his Title II claim:
16  degenerative disc disease; right foot impairment; and polysubstance
dependence (20 CFR 404.1520(c)).  The severe impairments of left knee
17  impairment; depression, and PTSD are excluded by 20 CFR 404.1506
under his Title II claim.  Since the alleged onset of disability, August
18  31, 2010, the claimant has had the following severe impairments under
his Title XVI claim: degenerative disc disease; right foot impairment;
19  left knee impairment; polysubstance dependence; depression; and PTSD
20  (20 CFR 416.920(c)). (AR. 21).

21  At the time of the hearing, plaintiff was living with a friend and his wife and his

22  son, daughter-in-law and 2 grandchildren were living in his soon-to-be-foreclosed home

23  (AR. 55).

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 2

1

<u>PROCEDURAL HISTORY</u>

2

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42

3

U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

4

U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and

5

following reconsideration (*see* AR. 97-109, 110-22, 125-39, 140-54). Plaintiff's

6

requested hearing was held before Administrative Law Judge Scott R. Morris ("the ALJ")

7

on January 9, 2014 (*see* AR. 41-94). The ALJ held a preliminary hearing on September

8

16, 2013 (*see* AR. 994-1031). On January 21, 2014, the ALJ issued a written decision in

9

which the ALJ concluded that plaintiff was not disabled under Title II pursuant to the

10

Social Security Act, but was disabled pursuant to Title XVI (*see* AR. 13-40).

11

On July 25, 2015, the Appeals Council denied plaintiff's request for review,

12

making the written decision by the ALJ the final agency decision subject to judicial

13

review (AR. 1-6); *see also* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

14

seeking judicial review of the ALJ's written decision in September 2015 (*see* Dkts. 1, 3).

15

Defendant filed the sealed administrative record regarding this matter ("AR.") on

16

November 30, 2015, and a supplemental record on March 10, 2016 (*see* Dkts. 9, 17).

17

In plaintiff's Opening Brief, plaintiff raises the following issue:  (1) Whether or

18

not the ALJ's determination that plaintiff's knee impairment is felony-related, and

19

therefore excluded from the disability determination under Title II, is supported by

20

substantial evidence and free of legal error (*see* Dkt. 18, p. 1).

21

On June 10, 2016, the undersigned submitted a Report & Recommendation on

22

plaintiff's request for relief, finding that the ALJ's finding that plaintiff's left knee

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 3

1  impairment was aggravated by his actions in the course of committing a felony was

2  supported by substantial evidence (*see* Dkt. 21). Plaintiff filed Objections to the Report &

3  Recommendation (*see* Dkt. 22), and defendant filed a Response to Plaintiff's Objections

4  to the Report & Recommendation (*see* Dkt. 23). By Order dated August 16, 2016,

5  District Judge Benjamin H. Settle declined to adopt the Report & Recommendation, and

6  re-referred the case for "consideration of whether the ALJ adequately explained his

7  conclusion that the September 2013 surgery was ultimately the result of the felony injury

8  rather than the original injury" (Dkt. 24, p. 2).

9

10                                    STANDARD OF REVIEW

11          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

12  denial of social security benefits if the ALJ's findings are based on legal error or not

13  supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

14  1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

15  1999)).

16                                         DISCUSSION

17     **(1)     Whether the ALJ failed to adequately explain his conclusion that the
               felony exclusion rule applied to plaintiff's knee impairments.**

18

19             *a.   Whether the ALJ Adequately Explained His Decision*

20          Plaintiff contends that the ALJ erred by finding plaintiff's knee impairment was

21  aggravated in connection with the commission of a felony, and thus erred in excluding

22  plaintiff's knee impairment from the disability determination under Title II (*see* Dkt. 18).

23  Specifically, plaintiff argues that the medical evidence "reflects no evidence that

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 4

1   Plaintiff's March 2011 injury resulted in permanent aggravation of his knee impairment

2   such that his increased knee pain in September 2013 can be attributed to the April 2011

3   injury and not the August 2010 injury" (*id.*, p. 4; *see also id.*, p. 8).

4       When evaluating plaintiff's complaints through the sequential disability evaluation

5   process under Title II, the Commissioner must comply with 20 C.F.R. § 404.1506(a),

6   which provides: "In determining whether you are under a disability, we will not consider

7   any physical or mental impairment, or any increase in severity (aggravation) of a

8   preexisting impairment, which arises in connection with your commission of a felony

9   after October 19, 1980, if you are subsequently convicted of this crime." This rule does

10  not apply to Title XVI claims. *See id.* Social Security Ruling ("SSR") 83-21 clarifies that

11  the clause "in connection with" does not require a

12

13          causative connection between the commission of the felony and the
            disabling condition, but it must be closely related to, or associated with the
14          commission of the offense. In general, the disabling condition (the
            impairment or the aggravation of a pre-existing impairment) must have
15          occurred at a time and location that is near (i.e., close to the time and place)
            to the felony. Ordinarily, the decision as to this issue will be obvious.
16

17  1983 WL 31258; *see also Iglesias v. Colvin*, 2016 WL 1183087, at *2 (D. Or. Mar. 28,

18  2016); *Ramirez v. Comm'r Soc. Sec. Admin.*, No. CIV 09-684-KI, 2010 WL 4683847 (D.

19  Or. Nov. 10, 2010), *aff'd sub nom. Ramirez v. Comm'r of Soc. Sec. Admin.*, 463 F. App'x

20  640 (9th Cir. 2011). SSR 83-21 also clarifies that "if a pre-existing impairment[s] was

21  aggravated 'in connection with' the commission of the felony … consideration of the

22  felony-related impairment[s] …. *applies for the life of the individual.*" 1983 WL 31258,

23  at *4 (emphasis in original).

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 5

1    Here, on August 31, 2010, plaintiff crashed his vehicle into a tree (AR. 427, 497).

2  Plaintiff was treated for a number of injuries, including left open patellar fracture (AR.

3  427, 497). That same day, plaintiff had an x-ray of his knee, and the radiologist observed

4  "[m]arkedly comminuted open patellar fracture" (AR. 608). On September 1, 2010,

5  plaintiff had surgery to repair his left knee, including a "[p]artial patellectomy and

6  reconstruction of extensor mechanism" (AR. 531). Upon discharge from the hospital on

7  September 15, 2010, plaintiff was in a cylindrical cast on his left knee, and he was

8  permitted "WBAT [weight bearing as tolerated]" with respect to his left knee (AR. 687).

9

10    On October 28, 2010, an x-ray of plaintiff's left knee showed improvement (AR.

11  584). The radiologist observed that "[t]here is better anatomic alignment of fracture

12  fragments about the patella. There is surrounding soft tissue swelling. No new fracture or

13  alignment abnormality is demonstrated" (AR. 584). On November 4, 2010, plaintiff's

14  orthopedic provider noted that plaintiff's left knee had "diminished range of motion," but

15  that he was "healing well" (AR. 546). At an appointment on December 3, 2010,

16  plaintiff's orthopedic provider observed that plaintiff "ambulates in a non-antalgic gait

17  without any overt imbalance or instability but exhibits a reduced left lower extremity leg

18  stride that he attributes to knee and ankle stiffness" (AR. 544).

19    Three months later, police officers executed a search warrant on plaintiff's home

20  on March 29, 2011 (AR. 37). During plaintiff's arrest, plaintiff "vigorously struggled

21  with the deputies during their attempt to place him into custody. Ultimately, plaintiff pled

22  guilty to three felony offenses in connection with the arrest (AR. 393; 409-410).

23

24  Approximately one week after the arrest, on April 7, 2011, an x-ray of plaintiff's left

1  knee indicated that his knee was worse (AR. 578). The radiologist observed "[t]here is

2  further distraction of the fracture fragments of the patella since the previous study

3  [compared to the October 2010 x-ray], with widening now of approximately 9.1 cm. No

4  additional fracture-dislocation is seen. There is a probable moderate-sized suprapatellar

5  knee effusion. There is diffuse soft tissue swelling about the knee, increased since the

6  prior study" (AR. 578). In one treatment note, plaintiff's orthopedic doctor observed that

7  the plaintiff "reports being forcibly brought into a police vehicle a couple weeks prior to

8  the most recent visit and felt a pop and ultimately made it to see us about a couple weeks

9  later" (AR. 527). On April 12, 2011, plaintiff had surgery to repair his left knee,

10 including "[r]evision fixation, left patella with partial distal patellectomy" (AR. 527). At

11 the hearing before the ALJ, plaintiff testified that he "got [his] knee reinjured severely

12 and had to have the surgery and [his knee] wired together" as a result of the search

13 warrant and arrest at his home (AR. 49). On September 18, 2013, due to complications

14 with the wiring in plaintiff's left knee, plaintiff had a third surgery to remove hardware in

15 his knee (AR. 938, 984).

16 

17     The ALJ determined that:

18     Pursuant to 20 CFR 404.1506, I find that the claimant's left knee
       impairment, depression, and post-traumatic stress disorder (PTSD) are
19     excluded under his Title II claim because they arose in connection with his
       commission of felonies for which he was ultimately convicted. Regardless
20     of his previous knee injury, the evidence clearly shows that he re-injured
       his left knee while struggling with police officers during the police raid
21     [and plaintiff's arrest]. The evidence also shows that he subsequently
       developed depression and PTSD as a direct result of his experience during
22     the raid and subsequent incarceration. Therefore, I will not include the
       claimant's left knee impairment, depression, and PTSD when analyzing his
23     record to determine his residual functional capacity under his Title II claim.

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 7

1      However, an analysis of the claimant's record under his Title XVI claim
       remains unchanged by this regulation.

2

3    (AR. 19). The ALJ also determined that, under Title XVI, plaintiff's left knee impairment

4    became disabling on September 1, 2013, due to painful hardware placed during one of

5    plaintiff's previous surgeries (AR. 31-32). Plaintiff argues that the ALJ "did not

6    adequately explain his conclusion that the felony exclusion rule applied to [plaintiff's]

7    knee impairment" (Dkt. 22, pp. 1-2). The undersigned agrees.

8          Although the ALJ determined that plaintiff's left knee impairment became

9    disabling on September 1, 2013, the ALJ's decision is devoid of a determination that the

10   2013 surgery to remove the painful hardware was a result of complications from the

11   September 2010 surgery following the original injury in August 2010 or the April 2011

12   surgery following the disqualifying felony injury in March 2011 (*see generally* AR. 17-

13   34). An ALJ's decision must be based upon substantial evidence in the record as a whole

14   and these findings cannot be made adequately by ignoring significant probative evidence

15   to the contrary. *See* 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1 (citing

16
     *Tidwell*, 161 F.3d at 601); *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting
17
     *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642
18
     F.2d 700, 706-07 (3d Cir. 1981))).
19

20         Whether plaintiff's disabling condition was the result of felony aggravation of the

21   injury or a result of the original injury is significant, probative evidence because SSR 83-

22   21 provides that a claimant's impairment is excluded "only to the extent of the

23   aggravation." *See* SSR 83-21, 1983 WL 31258, at *4. Thus, the fact that the impairment

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 8

1  was aggravated during the commission of a felony does not exclude the impairment from

2  consideration under Title II if the original impairment is disabling. *See id.* As the ALJ

3  failed to provide any discussion regarding which surgery resulted in placement of the

4  painful hardware, and ultimately resulted in the disabling condition of the knee

5  impairment in September 2013, the ALJ's discussion of plaintiff's felony injury is

6  inadequate. In reviewing the ALJ's ruling, the Court cannot determine if the ALJ

7  properly considered which injury and resulting surgery caused the disabling condition.

8  Accordingly, the ALJ erred by failing to explain whether plaintiff's disabling knee

9  impairment was caused by the August 2010 original injury or the March 2011

10  disqualifying felony injury.

11

12          *b.   Harmless Error Analysis*

13          "[H]armless error principles apply in the Social Security context." *Molina v.*

14  *Astrue,* 674 F.3d 1104, 1115 (9th Cir.2012). An error is harmless, however, only if it is

15  not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability

16  determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

17  The determination as to whether an error is harmless requires a "case-specific application

18  of judgment" by the reviewing court, based on an examination of the record made

19  "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at

20  *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders,* 556 U.S. 396, 407 (2009)).

21  Significantly, the ALJ's failure to adequately explain his conclusion resulted in a finding

22  that plaintiff was ineligible for benefits under Title II, which certainly is harmful to

23  plaintiff. Moreover, when an ALJ ignores significant and probative evidence in the record

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 9

1   favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete residual

2   functional capacity determination." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

3   As a determination that plaintiff's disabling knee impairment resulted from the original

4   injury and surgery would change the residual functional capacity under plaintiff's Title II

5   claim as well as the ultimate disability determination under Title II, the ALJ's error was

6   harmful and requires reversal.

7          **(2)      Whether the ALJ's decision is supported by substantial evidence.**

8          Plaintiff also contends that the ALJ's findings are not supported by substantial

9   evidence in the record (*see* Dkt. 18, p. 4). Because the Court has already found that the

10  ALJ failed to consider significant, probative evidence in finding plaintiff ineligible for

11  Title II benefits, and that error was harmful, the Court need not address whether the

12

13  ALJ's decision is supported by substantial evidence. However, as noted by plaintiff, the

14  ALJ shares a duty to fully and fairly develop the record "to assure that the claimant's

15  interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)

16  (citation and quotation omitted). The ALJ's duty exists even if the claimant is represented

17  by counsel. *Id.* However, the ALJ's duty to supplement the record is triggered only if

18  there is ambiguous evidence or if the record is inadequate to allow for proper evaluation

19  of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Thus, to the

20  extent the ALJ finds the evidence ambiguous and cannot determine whether plaintiff's

21  disabling knee impairment resulted from the original injury and hardware placed during

22  the September 2010 surgery or the felony injury and hardware placed during the April

23

24  2011 surgery, the ALJ shall further develop the record, if necessary.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 10

CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation.  **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on September 23**,** 2016, as noted in the caption.

Dated this 29th day of August, 2011.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 11